and go on to the next case on the calendar. United States v. Flores-Altamirano, 22-50267 Good morning. May it please the Court, my name is Howard Schneider. I'm here on behalf of the appellant, Jorge Luis Flores-Altamirano. With the Court's permission, I'd like to reserve two minutes for rebuttal, but I'll watch the clock. Okay. This case presents a constitutional issue under the Fourth Amendment, as well as a statutory issue under Section 1357. If the Court finds a constitutional violation, then that will be the end of the matter, so I will start with the Fourth Amendment issue here. ICE officers did not have probable cause that Mr. Flores-Altamirano committed a crime before his arrest. Counsel, you can use your time, of course, the way you want. It strikes me as you're referring to what I think is probably the heart of the issue about whether a violation of Section 1357 has suppression as an available crime. I think that's it. Let's talk about that. Sure, I agree. And I think the correct framing for that issue is whether the Court can use its supervisory powers to suppress. And to be very clear about what we're asking for is, in our view, a modest request to remand to the District Court to decide in the first instance whether suppression is appropriate. We're not asking this Court to order suppression. We're simply asking for this Court to remand so that the District Court can make that assessment in the first instance. There are two main bases for suppression under the Court's supervisory authority. One of them is to deter future violations of a statute, and that line of cases stems from McNabb and goes through Roberts and Dreyer in the Ninth Circuit. Another basis, though, separate and apart from that, comes from the outrageous government misconduct line of cases, such as Fernandez, that talk about flagrant government misconduct coupled with substantial prejudice to the defendant. And the cleanest line here, I think, comes from Dreyer in that line of cases, in terms of the Court having the supervisory power to suppress. And that's to deter future statutory violations. What we have in this case is we have a situation where ICE officers did not get a warrant before the arrest when they easily could have and should have. Instead, they arrested without a warrant. No, because, of course, either that or they're really bad record keepers, right? They indicated, I think there's indication in the record that if they thought they did get one, then they couldn't find it. The fact that they say they thought they got one certainly forecloses the argument that they didn't have time to get one. I'll grant you that. The District Court assumed that they didn't get one because they couldn't produce it, right? That's correct. What do you think we should do with that fact pattern? So I think it's important to remember that although the District Court made that assumption, the District Court noted in Footnote 2 of its order that it was extremely troubled by what happened here. In particular, and this is at ER 184, Footnote 2, the court says, notwithstanding the court's alarm that officers sought to recreate a believed missing warrant, it doesn't change the court's analysis, but the court urges the government in the strongest terms possible to educate the officers in the ERO that recreating and backdating a missing warrant would be considered evidence tampering and would be sanctionable conduct. Pretty strong rebuke, to be sure. So when we look at the, I think you're talking about the prong of cases, and necessarily so, where if there's going to be a decision made about whether the exclusionary rule should be applied, which is not our first instinct by any means, we've said it's our last, we look to see whether there's been misconduct that needs to be corrected. And we have that District Court strong language that you've mentioned. But the other part of what's picked up and was in jail, I think jumped through the hoops correctly, I don't mean to be disrespectful in any way in paraphrasing that, but ask for a hold, the jail let him go, so then they're trying to follow the rules, right? Then they go try to find this person again, they find him, it seems to me they have tons of probable cause with all respect, right? And it seems to me they're trying to do it right. So what is it we're deterring, apart from the strong language the judge just, that you just described, they say they went to get this administrative warrant, got it, can't find it, and then somebody tried to recreate it, she slapped their wrists hard to say don't do that again. I think correctly, so. But at this point, you think the exclusionary rule will be appropriate because? Yes, Your Honor. So to answer your concerns, I think that it's it's more of a problem than just a slap on the wrist about what happened after the fact. I mean, the strong implication, what the record indicates very strongly is that there was chicanery beforehand, that this pre-arrest warrant, if it existed, there should have been a record of it somewhere. They have a record of a post-arrest warrant, which that's what they were trying to play around with. And there's email communications about the post-arrest warrant, but there's zero evidence that a pre-arrest warrant actually existed other than their bare assertion and their declarations. It's not there. And so I think that is a serious problem when coupled with the fact that this is not the first time that this has happened. And there are other cases where we look to, you know, widespread abuse. I mean, Congress had this rule for a reason that requires that this step be taken. And what is your best indication that there's this been that the government has broadly disregarded this requirement? So below the, we cited a couple instances around the same time frame of where this has happened in different cases. And then in the appeal, we cited some other cases as well where this has been a problem. This is an issue where ICE has not gotten pre-arrest warrants or has fabricated certain things in the field operations worksheet folder. And so I just, I think that I would rely on what we cited in our briefing and also in the record below. But there is an indication that this is not a one-off. And also I will say that just given the ICE officers sort of like nonchalant way that they reacted in this, in this case also is indicative of something more serious. I know the court, Your Honor referenced it as record keeping issue, but that's not our position. Our position is it cuts a lot deeper than that. I didn't mean to make light of it. You know, you did reference our, our dryer opinion, an en banc decision where we had, you know, very, very serious violations. And what we said there is the exclusionary rule is not our first instinct and that we, we spent some time laying out exactly what the government's burdens were and basically said in that case, we trust you're going to get this right. So my, hence my question on it, you're obviously familiar with that case, but it looks like Judge Fletcher is winding up. Yeah, I do have a question. If you're asking us to send it back, that is to say, that assumes then that we would disagree with Judge Gee on this second prong of the statutory test, that is to say worried about escape or timeliness. My question is, do, would we owe some deference to Judge Gee's decision? Or is it just a question of law that if we disagree, we disagree? I'm trying to figure out if we send it back and Judge Gee rules either for or against you, do we, is it abuse of discretion? I mean, what's the standard by which we would review Judge Gee? That's a good question. I don't want to speak out of school on that. I, I'm not a hundred percent sure because I, I'm not sure if it's purely a legal question or if it might be a mixed question. I don't remember finding a clear answer in the case. Because if it's a purely legal question, I would see no reason at all to be mad. Why is that? Because we can simply decide it. Whatever Judge Gee decides, we would simply re-decide on our own. Oh, okay. I understand. I mean, I, I just, I don't want to speak out of school and say something that's wrong. So I, I could submit something post-argument on that point. I'm not, I'm not a hundred percent sure. Only if asked. Okay, okay. What she relied on, right, is this sentence, I think on page three, now I just flipped it, on three of her order, right? As for the likelihood of escape requirement when the alien's deportability is clear, which it was here, and undisputed, which I think that's also true, the circumstance, that circumstance alone may provide a sufficient basis for an immigration officer to believe escape is likely. My problem with that rationale is that I think it would apply to every case. And yet, right, where someone is found back in the country, and yet Congress required this administrative warrant to be obtained. Do you want to respond to that? No, I agree with Your Honor on that point. And, and we pointed out that that was from a second-circuit case in DICTA, no less, and we don't think that that's binding case law. I, I'm almost at my time. I did want to respond about the Dreyer point, but I can do it on rebuttal, whatever the, Your Honor preferred. Whatever you prefer. I, if I can have more time in rebuttal, I'll do it now. Sure. We'll save your time. When you come back, what, why don't we, when you come back, we'll put two minutes on the clock. Okay, very well. Then, then just to answer briefly the point about Dreyer, I think it's, it's very different for a few reasons. First of all, as the court, as you're... We were going to put two minutes on the clock so you could... Oh, yeah, I'm sorry. Very well. Thank you. Okay. All right. Thank you so much. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the court. I'm Courtney Williams on behalf of the United States. This court should affirm the district court's ruling for, for a couple of reasons. First, there was ample amount of probable cause to, for the officers to believe that the defendant had illegally reentered the country in violation of section 1326. And we believe that should end the court's analysis because it was a constitutional stop in this particular case. And, and the evidence that the district court relied on for, for that particular prong of probable cause is a final order of removal, a positive identification by the officers by comparing the defendant to the photograph in his alien file, and then reviewing his Mexican ID. Also, there was a detainer, and in the detainer, the detainer noted that there was probable cause that the defendant was removable based on a final, final order and biometric confirmation of defendant's identity by comparison to records in a federal database. But additionally, the defendant was characterized and labeled as reinstate. And that, that has a very specific meaning in terms of, it means that the defendant was, there was a final order of removal in the record. He was removed. And then presumptively he's back here in the country illegally. But also on the field operations worksheet, which is in the record at ER 89, the officers indicate that they check the claims database. And that shows that, that they did find records that the defendant did not seek permission to appear here, permission to be back here. So this is all still just going to the 14th Amendment claim? This is all going to the 4th Amendment claim. Because you're, you're pushing on an open door. You win on that, at least as far as I'm concerned. The harder question is the statutory 1357. Right. So if there's a constitutional violation, there's still a statute that requires them to get this administrative warrant. Can you focus on that? I will focus on that. Although I do believe because it was a constitutional arrest, I do think that that ends the, the issue. But I will focus on that. That's not right. You've got to satisfy 1357. Congress put it there for a reason. So, so if you just take that as a given, maybe that's the best use of our time. Because at least two of us seem to think that there's still, that statute still needs to be complied with. Or there needs to be an excuse. Or we need to talk about whether the exclusionary rule is properly applied here. Sure, Your Honor. Well, in this particular case, the district court did find that the officers did comply with both prongs of third, of section 1357. The second prong strikes me as, I'm not so sure I agree. Because under the second prong, the district judge has to find that the officers were justified in concluding that he was likely to escape before they could get a warrant. Well, he was there in the same place. They waited a month. They knew where he was. They were pretty leisurely if they thought he was likely to escape. So that is the textual language of the statute. That's right. And I think we've got to satisfy the statute. I'm a textualist. Indeed. So that is the textual language. But I would argue that we must look to the case law to interpret the textual language. And what Contreras lays out is that when an alien's deportability is clear and undisputed, that that circumstance alone may provide sufficient basis for an immigration officer to believe that escape is likely before a warrant can be obtained. That's an exception to the statute. You've got to go get a warrant unless you think that he's going to get away. Right? That's how I read that. And so what I think this record shows, the first problem for the government is they say they did have time to go get a warrant and they did. That's what they're telling us. And they just lost it. They can't find it. That's true. Okay. And then the second problem is I think it's undisputed for the reasons Judge Fletcher just explained. They knew where he was. They were watching him. They were surveilling him for some period of time. Which is why I directed counsel, opposing counsel, to talk about the exclusionary rule. If we decide that the statute was violated because they were required to get a warrant and they can't produce one, they didn't get one, district court assumed they didn't have it. I think she had to assume that because they couldn't produce it. Then is the exclusionary rule the remedy here? The exclusionary rule is not the right remedy in this particular case because the statute, section 1357, number one, does not lay out a suppression remedy in the statute. And also... Does the exclusion remedy exist under the statute? It does. Can you repeat your question? You said 1357 doesn't have in it an exclusion remedy. But under the case law, we do exclude sometimes when there's been a failure to comply with 1357. Correct? I believe what my colleague pointed out is that the court can exercise supervisory powers to exclude. I'm not sure it was pertaining to section 1357, but what my colleague was not able to produce is a single case where this court has actually suppressed evidence for a statutory violation. This is a generic statement of the case law. I think the generic statement of the case law would be that a violation of 1357 can be a basis to not the same standard as a 14th Amendment exclusionary standard, and there has to be something more than a simple violation. Well, in this particular case... That's an open door for you to make an argument. This is not the exceptional case. That's correct, Your Honor. In this particular case, we do not believe that it's the exceptional case because as Judge Christian, as you pointed out earlier, I think all the officers in this case were attempting and trying to do everything correct in this particular case. They drafted a field operations worksheet. The field operations worksheet was signed by a supervisor. It's reinstated at the top. There are several databases that they checked in this particular case. They conducted surveillance at the defendant's home. In the I-213, which the ERO officers drafted on the record at ER 81 through 84, they put in their report that they told the defendant that there was a warrant out for his arrest, which indicates that they believed that they did have a warrant. They requested a detainer. They compared the defendant's photograph to his alien file, which they had at the time, and then they confirmed his identity through that photograph and then his Mexican ID. So what you see here is that these officers are attempting to do everything right and are taking necessary steps. The exclusionary rule is usually applied to deter constitutional violations. Here, where you have deportation officers who largely operate in the civil deportations, any deterrence benefit that would be gained is marginal at best. The societal and social cost of excluding the evidence of this case far outweigh any deterrence benefits that would be received in this particular case. So we don't believe that this court should apply the exclusionary rule. Are there questions? I don't have any more either. And with that, I'll submit. Thank you. Thank you very much for your argument. Now we're going to let opposing counsel talk about Dreyer. You have two minutes, sir. Thank you, Your Honor. So in terms of why this is different than Dreyer, so in Dreyer, it was a situation where this court had to decide in the first instance whether suppression was appropriate or not. It was also a situation where it dealt with the military. And the court noted in its opinion that the military was already taking measures to self-correct. And that was, I believe, brought up by the government at oral argument. This is not that situation. This is a situation where ICE officers are not taking any measures to self-correct. And in fact, what the record we have in front of us shows that this is a repeated problem. And I'll point to in the excerpt of record ER 22 through 23, where below we argue this was not an isolated incident. And then in our opening brief at pages 35 through 37, we also cite examples of why this is not an isolated incident. And compounded by that is the flagrancy of the ICE officers' disregard here in not getting a pre-arrest warrant and then trying to cover it up afterwards. Again, it's not our view that this was a bookkeeping thing. This was something where they not only didn't do what they were supposed to do, then they tried to cover it up on the back end in ways that... You don't have a fact finding. Are you asking us to make one? I'm sure you're not, but you're asking us to find that they never got the warrant in the first place and that they misrepresented that to the district court. I don't have evidence of that. What I'm asking is for the court to remand to the district court can do pertinent fact finding, because we believe there was flagrancy here. And that is a whole other basis, I will say, aside from Dreyer and the outrageous government conduct line of cases. Flagrancy plus substantial prejudice is also a basis to suppress. So for both lines of cases, the court below could find suppression as appropriate. And all we're asking is for you to remand. Again, we're not asking you to find that suppression is appropriate here. Do you have any... Really quick, do you have any... Can you tell me what any of those other cases that you're saying that show this is like a practice of the government? What's the brief summary of the facts of any of those other cases? The briefest summary I can give you is there are other examples of them not getting a pre-arrest figure out like, you know, it's one thing if they were, you know, they're going to somebody's home and they're knocking on the door and arresting them without... This is a little different because they are staking out a place that they think the person might come to, but they don't know if the person's going to come to. And then when the person eventually does show up, then it seems clear to everybody, I assume, that if you don't nab them then, then they're gone, right? So the likelihood of escape. So there's some really challenging questions here because of... I'm just trying to figure out if these other cases are actually like this or if they're instances where they know the person's at their home and instead of getting a warrant, they just go and grab the person at their home, living in their home, you know, and they knocked on the front door and arrest them. I believe they are cases like this one. And I think the clearest example is the dissenters... I don't want to take you too long, but it sounds like you don't... I will just point the court to the dissent in Santos Portillo, which is the Fourth Circuit case that the government relies on in part. That gives a good description of the kinds of cases. And what I referred to in the record and in our brief, I don't have them all at my fingertips, but there are similar circumstances and it does indicate a problem. And further fact-finding would help flesh that out even more if this isn't remanded. So again, that's what we're asking for is remand. Thank you. Thank you, counsel. Thank you both for your arguments. We'll take that case under advisement.
judges: FLETCHER, CHRISTEN, VANDYKE